UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Alberto Zavala (R53809),  )<br>   )<br>    Petitioner,  )<br>   )<br>  v.   )<br>   )<br>   )<br>David Gomez, Warden,  )<br>Stateville Correctional Center,  )<br>   )<br>    Respondent.  ) | Case No. 20 C 2787<br><br>Hon. Rebecca R. Pallmeyer |

### MEMORANDUM OPINION AND ORDER

Petitioner Alberto Zavala, a prisoner at the Stateville Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his 2006 murder and home invasion convictions from the Circuit Court of Cook County. The petition alleges: (1) ineffective assistance of trial counsel during pretrial plea negotiations; and, (2) ineffective assistance of postconviction counsel along with a related challenge to the postconviction process. Petitioner also asks the court to appoint counsel and allow him to pursue discovery. For the reasons explained here, the motions for attorney representation and for discovery are denied. The court denies the § 2254 petition on its merits, and declines to issue a certificate of appealability.

**I.    Background**

    **A.    Lack of State Trial Court Record and Transcript**

In support of his answer to the petition, Respondent has submitted the state court appellate briefs and decisions, but has not provided the court with the state trial court record or transcripts. (Dkt. 21.) In an August 31, 2020 filing, Respondent explained these materials are "currently unavailable due to procedures put in place during the COVID-19 pandemic," but will be submitted once they are accessible. (Dkt. 21, pg. 1, n.1.) As set forth in the rules, a respondent is expected to submit the "parts of the transcripts that the Respondent considers relevant" in support of the answer. Rule 5(c), Rules Governing Section 2254 Cases in the United States

District Courts. When a transcript is unavailable, the respondent may submit a narrative summary of the evidence, and the court may order the respondent to submit any supplemental transcripts deemed necessary. As the Court of Appeals has observed, however, "[w]hile the review of a state court transcript is occasionally necessary in habeas cases, it is certainly not required and is, in fact, quite rare . . . . [T]he decision of whether transcripts are necessary is left to the sound discretion of the district court." *Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004). In this case, the court concludes the materials submitted by Respondent are sufficient to allow for resolution of the petition. Respondent did not submit a separate narrative summary, but did submit the state appellate court opinions, which have a presumption of correctness, 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted), and provide the necessary narrative summary of the relevant evidence.

Petitioner, who has the burden of rebutting through clear and convincing evidence the presumption afforded to the factual findings in the state court opinions, does not dispute the factual information set forth in the state court decisions. His disagreement is with the state court's legal conclusions. Although it is good practice for the full state court record to be before the court when it reviews the habeas corpus petition, *Thompson v. Battaglia*, 458 F.3d 614, 617 (7th Cir. 2006), the court is within its discretion to rely upon the state appellate court opinions and will do so in this case. *Simental*, 363 F.3d at 612.

### B.     Facts of Petitioner's Convictions

Petitioner's murder and home invasion convictions arose out of an $18,000 debt owed to him by Charles Conrick. *People v. Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *1 (Ill. App. Ct. Sept. 28, 2018). Petitioner asked Conrick to identify someone who could be robbed in order to reduce the debt. *Id.* Conrick named the murder victim, Phillip McGovern,

2

and told Petitioner there were cash and drugs in McGovern's home. *Id.* Petitioner contacted Robert Orosco, who assembled a three-man team to carry out the robbery. *Id.*

On October 2, 2001, Petitioner and Orosco drove past McGovern's home to confirm he was there. *Id.* They then drove past the home, down the street to where the robbers were waiting in another car, signaled those robbers to proceed, and then left the scene. *Id.* One of the robbers knocked on the victim's front door posing as a pizza delivery man. *People v. Zavala*, No. 1-07-0287 (Ill. App. Ct. May 22, 2008) (Dkt. 21-5, pg. 12.) The group forced their way into the home where a gun fight ensued between McGovern's fiancé and the offenders. *Id.* McGovern was killed during the gun battle. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *1.

The police arrested one of the assailants after his fingerprints were found on the pizza delivery bag left at the crime scene. (Dkt. 21-5, pg. 12.) That offender gave a police statement that identified others involved. *Id.* The victim's fiancé identified the arrested man in a police lineup. *Id.* Petitioner was arrested and gave a statement to the police in which he admitted to organizing the home invasion. *Id.* Although he did not see any guns during the evening of the home invasion, and guns were not discussed with the robbers during planning, Petitioner admitted in his police statement that he understood that the robbers would carry guns in order to force their way into the home. *Id.* at 12-13.

Ultimately, two of the robbers pleaded guilty; the third proceeded to trial and was convicted. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *1. Conrick, who owed the debt to Petitioner, and Orosco, who recruited the robbery team, were found not guilty. *Id.* Petitioner was found guilty at trial of murder and home invasion based on his accountability for the conduct of the robbers. (Dkt. 21-5, pg. 13.) He received a 20-year sentence with a 15-year enhancement for the use of a firearm during the crime for a total of 35 years on the murder conviction. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *1. He was

3

sentenced to six years for the home invasion, with a 15-year enhancement for the use of a firearm resulting in a 21-year sentence. The 35-year murder sentence and the 21-year sentence for home invasion were ordered to run consecutively for a total sentence of 56 years. *Id*. The convictions and sentence were affirmed on direct appeal. *People v. Zavala*, No. 1-07-0287 (Ill. App. Ct. May 22, 2008); *People v. Zavala*, 897 N.E.2d 262 (Ill. Sept. 28, 2008) (Table) (denial of petition for leave to appeal).

      C.      **Petitioner's Postconviction Proceedings**

Through private counsel retained after his appeal, Petitioner sought post-conviction relief, arguing that trial counsel provided ineffective assistance during pretrial plea negotiations. The state trial court held an evidentiary hearing, at which Petitioner, his brother and father, and his two trial attorneys testified. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *2-4. One of the assistant state's attorneys (ASA) who prosecuted the case also testified, and testimony from a second ASA was entered via stipulation. *Id*. at *3.

Petitioner testified that his trial attorney informed him sometime in April or May 2004 that the prosecution was offering him a 10-year sentence in exchange for his pleading guilty to home invasion and testifying against codefendant Orosco. *Id*. at *2, *8. According to Petitioner, defense counsel assured him that because he was a first-time offender, he faced no more than 20 years in prison. *Id*. at *2. His defense attorney allegedly said nothing about sentencing enhancements or consecutive sentences. *Id*. After consulting his family, Petitioner told his attorney he wanted to reject the 10-year sentence offer. *Id*. Petitioner claims that his attorney reiterated that he faced a possible 20-year sentence if convicted. *Id*.

According to Petitioner, in June or July 2005, his attorney informed him of a new plea offer. *Id*. This time, he testified, the state offered him a 20-year sentence in exchange for a guilty plea without a cooperation requirement. *Id*. Petitioner says his attorney again told him the most he

4

faced if he went to trial and lost was 20 years, and again made no mention of consecutive or enhanced sentences. *Id.* Petitioner rejected the offer, telling his attorney it made no sense. *Id.*

Petitioner's father and brother testified at the evidentiary hearing in support of Petitioner's version of events. *Id.* at *3. The father testified that Petitioner's attorney spoke to the father directly to tell him about the 10 and 20-year sentence plea agreement offers, and said nothing about any possible sentencing enhancements or consecutive sentences. *Id.* The brother, who was present at the conversation between the lawyer and father and acted as a translator, also testified that the lawyer did not mention the possibility of enhancement or consecutive sentences. *Id.* The brother stated that he spoke to Petitioner over the telephone on numerous occasions about the plea offers, and that an enhanced or consecutive sentence was never mentioned in their conversations. *Id.*

Petitioner's trial attorney's testimony at the evidentiary hearing conflicted with Petitioner's and his family's version of events. The attorney said that the two plea proposals were not formal offers from the prosecution. *Id.* at *3. He related that he explained to Petitioner that any potential plea agreement would need approval within the prosecution's office. *Id.* Petitioner submitted a complaint about his lawyer's performance to the Illinois Attorney Registration and Disciplinary Commission and to the Chicago Bar Association; the attorney wrote a letter in response to those complaints and acknowledged, in his testimony at the hearing, that the letter said he had "secured" a plea offer, but he insisted that did not mean he had obtained a formal offer. *Id.* at *4.

With respect to the potential sentence, trial counsel insisted he had conveyed accurate information to Petitioner: he stated he told Petitioner he faced a sentencing range of 20 to 60 years on a murder conviction, and six to 30 years on the home invasion. *Id.* He claimed he told Petitioner that he faced the possibility of consecutive sentences, and also discussed the possible

5

15-year sentencing enhancements for each charge. *Id*. He asserted he explained these possible sentences to Petitioner on numerous occasions prior to trial. *Id*.

The defense attorney denied telling Petitioner or his family that he would receive a 20-year sentence as a first-time offender. *Id*. Instead, he testified that he told Petitioner and his family that he intended to argue for a 20-year sentence. *Id*. He explained the law was unsettled as to whether consecutive sentencing or sentencing enhancements should apply in Petitioner's case as he was facing conviction under an accountability theory. *Id*. Counsel explained that his strategy at sentencing was to argue that the sentencing enhancements and consecutive sentencing should not be applied. *Id*. Defense counsel, in fact, made this argument at sentencing, but it was rejected. *Id*. at *1.

Regarding the question of whether there was a formal offer in Petitioner's case, Petitioner conceded on cross examination at the hearing that plea offers were not discussed in open court prior to trial, and that prior to filing his state court postconviction petition, he had never made any claims concerning plea offers. *Id*. at *2. As his defense attorney pointed out at the postconviction hearing, there was no Rule 402(d)(1) conference—that is, a pretrial conference in which the trial judge engages with counsel in plea negotiations, Ill. S. Ct. R. 402(d)(2); *People v. Meza*, 376 Ill. App. 3d 787, 788-90, 877 N.E.2d 1189, 1190-91, 315 Ill. Dec. 860, 861-62 (3d Dist. 2007)—in Petitioner's case. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *3. Although the court conducted such a conference for Petitioner's codefendants, there was no such conference for Petitioner. *Id*. at *4.

The ASAs gave testimony consistent with that of Petitioner's main defense attorney; they testified that there was no formal plea offer in the case. *Id*. at *2. Petitioner's second trial attorney so testified, as well, though he conceded that he was not responsible for plea negotiations. *Id*. at *3. One of the ASAs noted that the prosecution office's policy required a

6

formal plea agreement offer to be in writing, and that any agreement would have to be approved by a supervisor. *Id.* Both a written offer and supervisor approval were lacking in this case. *Id.*

Testimony at the postconviction hearing suggests the reason that preliminary plea negotiations did not progress to a formal plea offer: Petitioner repeatedly stated he did not want to plead guilty. *Id.* at *8. Defense counsel explained at the hearing that Petitioner rejected the 10-year plea offer because it would have required him to testify against Orosco, who is a relative of Petitioner's. He further testified that Petitioner told him he would never testify against Orosco. *Id.* Then, when there was a discussion of a 20-year sentence that did not carry a cooperation requirement, Petitioner told his attorney that he would not plead guilty under any circumstances. *Id.* Petitioner's lack of interest in entering a guilty plea was the reason there was no Rule 402 conference, according to defense counsel. *Id.* The second chair defense attorney confirmed that testimony: Petitioner refused to testify against a codefendant, and stated an adamant desire to proceed to trial regardless of any plea offer. *Id.* Petitioner himself conceded on cross examination that he never suggested he wanted to enter a blind plea; that he wanted to proceed to trial; and that defense counsel moved to suppress his statements to the police because Petitioner wanted to fight the charges. *Id.*

At the close of the evidentiary hearing, the trial court denied the petition. The court determined that no formal plea offers were made in the case, that Petitioner was reasonably advised of the sentencing consequences, and that Petitioner was adamant about not wanting to plead guilty. *Id.* at *4. The state appellate court affirmed the denial of the postconviction petition, concluding that Petitioner could not demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), as applied in a plea bargain setting. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *8 ("Here the evidence establishes that [] defendant clearly and expressly, on many occasions, indicated a desire for trial.") (internal quotation marks and citations omitted). The Supreme Court of Illinois denied Petitioner's petition for leave to appeal,

completing his postconviction proceedings. *People v. Zavala*, 124 N.E.3d 465 (Ill. May 22, 2019) (Table). HIs petition for relief is now before this court.

## II. Analysis

### A. Claim One: Trial Counsel's Performance during Plea Negotiations

Petitioner alleges that his trial attorney was ineffective during plea negotiations because he gave erroneous advice about the possible sentence Petitioner faced if convicted at trial. This court reviews the state appellate court opinion on postconviction review because that was the last state court to resolve the ineffective assistance claim on the merits. *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Green v. Fisher*, 565 U.S. 34, 40 (2011); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)).

An ineffective assistance of counsel argument is governed by *Strickland v. Washington*, 466 U.S. 668 (1984); *see Missouri v. Frye*, 566 U.S. 124, 140 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) ("*Hill* establishes that claims of ineffective assistance of counsel in the plea bargaining context are governed by the two-part test set forth in *Strickland*.")). To demonstrate ineffective assistance of counsel, Petitioner must show both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The court is free to consider these issues in either order. *Strickland*, 466 U.S. at 697. When the issue of prejudice is straightforward, the court has discretion to address it before addressing counsel's performance. *Id.* If the Petitioner cannot show prejudice under *Strickland*, the court can resolve the case exclusively on that ground. *Id.*

In this case, the state appellate court addressed only the issue of prejudice. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *8. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a standard of review for issues that a state court adjudicated on the merits. *Harris*, 698 F.3d at 623. Thus, the court applies the deferential AEDPA standard to the issue of prejudice, but applies the pre-AEDPA standard to the issue of

8

trial counsel's performance, which the state court did not reach. *Myers v. Neal*, 975 F.3d 611, 620-21 (2020) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

### 1. Prejudice

As noted, the state appellate court addressed the issue of prejudice on postconviction review. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *4-8. Because that court was the last state court to address the issue on the merits, the court reviews its determination under the deferential standard of review established by AEDPA. Under that standard, the court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court's decision was based on an unreasonable determination of facts. 28 U.S.C. § 2254(d). "The AEDPA's standard is intentionally 'difficult for Petitioner to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). This "'highly deferential standard [] demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). The court's review of a *Strickland* claim is also deferential. *Knowles*, 556 U.S. at 123. The result is a "doubly deferential judicial review": the court layers deference under AEDPA upon deference under *Strickland*. *Id.*

*Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012), provide the clearly established federal law for *Strickland* prejudice when a plea offer is not accepted due to counsel's alleged deficient performance. *Lee v. United States*, 137 S. Ct. 1958, 1965 n.1 (2017). Petitioner must demonstrate a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163 (citing *Frye*, 566 U.S. at 148). He "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the

9

defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

The state court concluded that Petitioner did not meet that burden, and its decision is neither contrary to, nor an unreasonable application of, clearly established federal law. To the contrary, the state court properly identified *Strickland*, *Frye*, and *Lafler*, and applied the relevant standards from those cases. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *5. The state court noted that "defendant was adamant about not wanting to plead guilty." *Id*. at *4. He did not want to testify against Orosco, and did not want to plead guilty under any circumstance because he believed he was not guilty of the crime. *Id.* at *8. It appears the parties never progressed in negotiating a possible plea because Petitioner repeatedly rejected the prosecutor's initial forays on the subject. As a result, there was no Rule 402 conference, nor was there any formal written plea offer approved by supervisors in the prosecutor's office, as required.

In sum, the state court found that "the evidence established that [Petitioner] clearly and expressly, on many occasions, indicated a desire for trial." *Id.* at *8 (internal quotation marks and citations omitted). Factual findings by the state court have a presumption of correctness, 28 U.S.C § 2254(e)(1), and Petitioner has not successfully rebutted the presumption. The state court determined that there was no plea agreement in this case because of Petitioner's own decision to proceed to trial under any circumstance. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *8. The state court's determination that Petitioner could not demonstrate prejudice under *Strickland* was not an unreasonable application of clearly established federal law.

### 2. Counsel's Performance

Because he has not met the burden to establish prejudice, the court need not address Petitioner's claim that his counsel's performance was deficient. It bears noting, however, that

10

analysis of this issue is somewhat more complicated. Petitioner contends trial counsel erroneously advised him during the plea negotiation process that he faced no more than 20 years in custody if convicted at trial because he was a first-time offender. Defense counsel disputed this; he testified that he did inform Petitioner of the proper sentencing ranges and that sentencing enhancements and consecutive sentences could apply in his case. He explained that he intended to argue for a 20-year sentence (and indeed did so, albeit unsuccessfully), but never promised Petitioner that he faced no more than 20 years.

The state trial court, in its capacity as the finder of fact, concluded that the defense attorney properly advised Petitioner of the relevant sentencing law. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *4. The state appellate court declined to address counsel's performance, *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *8, as permitted under *Strickland*. *See Strickland*, 466 U.S. at 697. As a result, any review of the state court's finding on this issue would be governed by the more searching pre-AEDPA standard. *Myers*, 975 F.3d at 620-21 (citing *Wiggins*, 539 U.S. at 534). Even so, the court's review of counsel's performance is "highly deferential." *Strickland*, 466 U.S. at 689. In this review, the court is cautioned to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

The evaluation of counsel's performance involves consideration of two questions: (1) what did counsel tell Petitioner regarding state sentencing law prior to trial; and, (2) was counsel's explanation correct? Recognizing that it is not "always [] easy to separate questions of 'fact' from 'mixed questions of law and fact' for § 2254(d) purposes" under the pre-AEDPA standard, *Wainwright v. Witt*, 469 U.S. 412, 429 (1985), the court concludes that the question of what defense counsel told Petitioner prior to trial regarding his possible sentences if convicted is a factual question that receives deference under § 2254(d). *See Thompson v. Keohane*, 516 U.S.

11

99, 111 (1995). The question of whether defense counsel had an accurate understanding of state law when advising Petitioner is a mixed question of law and fact, not controlled by § 2254(d)'s deferential standard and instead reviewed *de novo*. *Thompson*, 516 U.S. at 111-12.

The court's review of state court factual findings is governed by the standard enumerated in *Townsend v. Sain*, 372 U.S. 293 (1963), and codified at 28 U.S.C. § 2254(d), until the passage of the AEDPA in 1996.[1] *Jefferson*, 560 U.S. at 289-91. Under this standard, the federal court accepts the factual findings by the state court following a full and fair evidentiary hearing unless one of the eight statutory exceptions in pre-AEDPA 28 U.S.C. § 2254(d) applies. *Id.* at 290. This standard requires the federal court to afford a "high measure of deference to the fact findings made by the state courts." *Sumner v. Mata*, 455 U.S. 591, 598 (1982). "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

In this case, the state court was presented with a swearing contest: Petitioner and his father and brother claimed that the defense counsel told them that Petitioner faced no more than 20 years of imprisonment, while defense counsel testified he told Petitioner he faced a sentencing range of 20 to 60 years on the murder, six to 30 years on the home invasion, and that consecutive sentences and sentencing enhancements could apply in his case. The state trial court, in its capacity as the finder of fact at the evidentiary hearing, chose to believe defense counsel over

---

[1] That language confirmed that state court findings are presumed correct unless the merits of the factual dispute were not resolved; the fact-finding procedure was not adequate; the material facts were not developed; the state court lacked jurisdiction; or the petitioner was denied counsel, did not receive a fair hearing, or was otherwise denied due process. *Jefferson v. Upton*, 560 U.S. 284, 290-91 (2010) (per curiam) (citing 28 U.S.C. § 2254(d)). The statute also permitted the federal court to reject factual findings if the court concluded, after review of the record as a whole, that the findings were not "fairly supported by the record." *Jefferson*, 560 U.S. at 291 (quoting 28 U.S.C. § 2254(d)).

12

Petitioner and his family. The state appellate court, in turn, deferred to that factual finding. This court has no authority to reject a factual finding predicated upon a state judge's determination crediting one witness over another. *Marshall*, 459 U.S. at 434.

Petitioner makes much of the fact that defense counsel argued for a 20-year sentence at the sentencing hearing; but the sentence that a lawyer zealously advocates for on the client's behalf is often much different than the advice tendered to the client in confidential communications. Indeed, American Bar Association standards, which inform the question of competent representation under *Strickland*, 466 U.S. at 688, require this type of zealous advocacy. ABA Criminal Justice Standards Defense Function 4-1.2(b) (2017). The state court's factual finding that defense counsel properly advised Petitioner of the possible sentences during plea negotiations is not inconsistent with the fact that defense counsel argued for a lesser sentence than Petitioner ultimately received. Indeed, if counsel genuinely believed Petitioner was likely to receive a sentence no longer than 20 years, one would have expected him to argue for a sentence well short of that purported maximum.

It is worth noting here that a portion of defense counsel's testimony at the evidentiary hearing appears to be mistaken. Counsel testified that prior to trial, the law was unsettled at the time as to whether Petitioner, who was being prosecuted under an accountability theory, qualified for either sentencing enhancements or consecutive sentences. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *3-4. Defense counsel's evidentiary hearing testimony was correct about the state of the law as to sentencing enhancements, but incorrect as to consecutive sentences. The appellate court overruled Petitioner's objection to sentence enhancements, citing cases decided after his 2006 conviction and sentencing. (Dkt. 21-5, pg. 15-16 (citing *People v. Rodriguez*, 372 Ill. App. 3d 797, 866 N.E.2d 1228, 310 Ill. Dec. 626 (1st Dist. 2007); *People v. Macias*, 371 Ill. App. 3d 632, 863 N.E.2d 776, 309 Ill. Dec. 144 (1st Dist. 2007))). The Supreme Court of Illinois subsequently resolved the issue, affirming the holding of *Rodriguez* that

13

the enhancement applied. *People v. Rodriguez*, 229 Ill. 2d 285, 891 N.E.2d 854, 322 Ill. Dec. 563 (2008). Petitioner's trial counsel could not have anticipated the subsequent Supreme Court of Illinois and Appellate Court of Illinois decisions, and his failure to do so does not mean his performance was inadequate. *Ramirez v. Tegels*, 963 F.3d 604, 614 (7th Cir. 2020).

Petitioner's attorney testified that the law with respect to consecutive sentences was also unsettled when he advised Petitioner prior to trial. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *3. It appears to this court, however, that the law was in fact, settled on this point in 1982 by the Supreme Court of Illinois in *People v. Sangster*, 91 Ill. 2d 260, 437 N.E.2d 625, 62 Ill. Dec. 937 (1982). *Sangster* held that a defendant who is responsible for the actions of his cohorts under an accountability theory is also liable for the severe bodily injury the cohort inflicts for purposes of the consecutive sentence statute. 91 Ill. 2d at 265, 437 N.E.2d at 628, 62 Ill. Dec. at 940; *see* 730 ILCS 5/5-8-4(a)(1) (West 2006) ("The court shall impose consecutive sentences if one of the offenses for which defendant was convicted was first degree murder or a Class X [] felony and the defendant inflicted severe bodily injury."); *People v. Causey*, 341 Ill. App. 3d 759, 771, 793 N.E.2d 169, 179, 275 Ill. Dec. 689, 699 (1st Dist. 2003). It appears, thus, that the law was clear that Petitioner faced a mandatory consecutive sentence if convicted at trial. *Causey*, 341 Ill. App. 3d at 772-73, 793 N.E.2d at 180, 275 Ill. Dec. at 700 (citing *Sangster*, 91 Ill. 2d at 265-66, 437 N.E.2d at 628, 62 Ill. Dec. at 940) ("[M]andatory consecutive sentencing applies even when defendant is convicted on accountability theory.").

Erroneous advice by counsel during plea negotiations regarding possible sentences can constitute deficient performance under *Strickland*, *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2020), but if the court were to reach the issue in this case, it would not find that counsel's apparent error warrants relief. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (internal quotation marks and citations omitted). Counsel did advise Petitioner that he faced the possibility

14

of consecutive sentences. *Zavala*, No. 2018 IL App (1st) 160720-U, 2018 WL 4760370, at *4. The state court finding, which the court must defer to under § 2254(d), is that defense counsel informed Petitioner that he faced up to 60 years on the murder charge, 30 on the home invasion, and additional 15-year enhancements for each of the two charges, and that the sentences could run consecutively. *Id.* In sum, Petitioner was advised that he faced a possible sentence of up to 120 years imprisonment, not 20 years, as he claims. An error on the issue of whether consecutive sentences were mandatory does not move the court to reject the state court's conclusion that defense counsel gave Petitioner appropriate advice. His performance met constitutional standards. *Harrington*, 562 U.S. at 110. Claim One is denied.

### B. Claim Two: Ineffective Assistance of Postconviction Trial Counsel

Petitioner contends his postconviction counsel was deficient, but a claim of ineffective assistance of postconviction counsel claim is not cognizable in a federal habeas corpus proceeding. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Petitioner also claims the postconviction proceedings themselves were deficient because the state court failed to consider his *pro se* filings during that process. This claim fails for a similar reason. There is no constitutional right to bring a postconviction petition, so a challenge to the deficiency of the proceedings requires some other freestanding constitutional violation such as a due process or equal protection concern. *See Flores-Ramirez v. Foster*, 811 F.3d 861, 866 (7th Cir. 2016). Petitioner complains that the state court rejected his efforts to bring *pro se* filings in his postconviction process, but Petitioner was represented by counsel in the proceeding. Petitioner cannot demonstrate a freestanding constitutional claim because there is no constitutional right to hybrid representation. *Hudson v. Uchtman*, No. 03 CV 8699, 2008 WL 4223661, at *7 (N.D. Ill. Sept. 9, 2008). Claim Two is denied.

15

### III. Petitioner's Motions for Counsel and Discovery

Petitioner filed a renewed motion for attorney representation and motion for discovery at the same time he filed the reply in support of the habeas corpus petition. Counsel is provided in a habeas corpus proceeding when an evidentiary hearing is needed or if the interests of justice require. *See* 18 U.S.C. § 3006A(a)(2)(B); *Martel v. Clair*, 565 U.S. 648, 659 (2012); Rule 8(c), Rules Governing Section 2254 Cases. Petitioner notes that he attempted to hire counsel but was unable to afford the fee. He has been able to represent himself in this case through the filing of his petition and reply in support, however. The court declines to appoint counsel in this case.

Nor is discovery necessary or appropriate. The court will order discovery in a § 2254 proceeding only where the petitioner has made "a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation" and has shown "'good cause' for the discovery.'" *Tabb v. Christianson*, 855 F.3d 757, 763 (7th Cir. 2018) (quoting *Hubanks v. Franks*, 392 F.3d 926, 933 (7th Cir. 2004)); *see also* Rule 6, Rules Governing Section 2254 Cases in the United States District Courts. Neither of these factors is shown here.

### IV. Certificate of Appealability and Notice of Appeal Rights

The court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right; i.e., reasonable jurists would not debate, much less disagree, with this court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this court. If Petitioner wishes to appeal, he must file a notice of appeal with this court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this court's ruling to preserve his appellate rights. If he does seek reconsideration, Petitioner may do so by filing a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion

must be filed within 28 days of the entry of this judgment.  *See* FED. R. CIV. P. 59(e).  The time to file a motion pursuant to Rule 59(e) cannot be extended.  *See* FED. R. CIV. P. 6(b)(2).  A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.  *See* FED. R. APP. P. 4(a)(4)(A)(iv).  Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.  *See* FED. R. CIV. P. 60(c)(1).  The time to file a Rule 60(b) motion cannot be extended.  *See* FED. R. CIV. P. 6(b)(2).  A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment.  *See* FED. R. APP. P. 4(a)(4)(A)(vi).

**V.  Conclusion**

Petitioner's habeas corpus petition [1] is denied, as are his motions for appointment of counsel [28] and for discovery [29]. Any other pending motions are denied as moot.  The court declines to issue a certificate of appealability.  The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner.  Civil case terminated.

ENTERED:

Dated: February 9, 2021

_____
REBECCA R. PALLMEYER
United States District Chief Judge